**Alexander L. FULKS and Oren C. Miller,
Appellants,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16475.**

United States Court of Appeals
Ninth Circuit.

Oct. 10, 1960.

Rehearing Denied Nov. 21, 1960.

Sam Houston Allen, Van Nuys, Cal., for appellants.

Laurence E. Dayton, U. S. Atty., San Francisco, Cal., Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before ORR, HAMLIN and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This appeal is taken from judgment of conviction of the crimes of theft of government property exceeding $100 in val-

ue, 18 U.S.C. § 641, and bribery of a government employee, 18 U.S.C. § 201. The principal question presented is whether there is evidence to support findings of guilt. The case was tried to the judge without a jury.

Appellant Fulks was a Los Angeles dealer in small airplane parts. Appellant Miller was an employee of a brewing company in Los Angeles and in slack season worked as a truck driver for airplane parts dealers, including Fulks. In the latter part of 1958, Fulks, on a competitive bid, purchased from the United States a substantial quantity of airplane parts located at McLellan Air Force Base in Sacramento.

The charges against Fulks relate to two occasions on which he was present at a base warehouse while his trucks were being loaded. Rose, a warehouseman at the base, was the principal government witness. At the time of the events to which he testified, he was lending undercover assistance to the FBI in its efforts to reduce the incidence of theft at the base. There are serious conflicts between his testimony and that of Fulks, but there is no doubt that the trial judge chose to believe Rose.

He testified that during the loading of Fulks' trucks on December 30, 1958, Fulks arrived at the base and was introduced to Rose, who showed him around the warehouse. During the course of their conversation, Fulks asked Rose whether Fulks' drivers had taken care of him and Rose replied that he had received $5 Fulks stated that it was his practice to give his drivers $100 a trip for expenses, allowing $20 to $30 for the loaders to see that they loaded properly. He then gave Rose $50. Upon returning to the loading area, Fulks saw three stacks of boxes including a crate containing 80 gyro horizon indicators. This material was stacked across the aisle from the material which was being loaded on Fulks' truck. Fulks stated to Rose that the three stacks of boxes were his and should be included in the load. Rose stated to Fulks that they were not his;

that they were not included on the list of material to be loaded. He knew that they were not Fulks' since they were on the wrong side of the aisle. Fulks said, nevertheless, he would like to have the extra material. The instruments were then loaded and during the course of the loading Fulks gave Rose an additional $100. These instruments constituted the material which is the subject of the theft charged in the indictment. The indictment specified:

"80 gyro horizon flight type indicators and other aircraft instruments of a value of more than $100.00"

Other witnesses testified that by warehouse procedure material was placed on the north side of the aisle before it went on bid; that after sale the material was transferred to the south side of the aisle under lot number; that two pallets of instruments had disappeared from the north side of the aisle between the time that they had been placed there on December 30 and the time that their disappearance had been noted on January 2.

According to Rose's testimony, Rose and Fulks then conversed respecting Fulks' final truckload, which was to be picked up January 2, the following Friday. Fulks stated that he would like to have Rose do the loading. There was not enough material remaining from Fulks' purchase to constitute a full truckload and Fulks expressed his wish that extra material be added: specifically, four stacks of boxes, constituting eight to twelve crates, each containing 40 gyro horizon indicators.

On January 2, Fulks returned with the truck and renewed his request for the extra material. Rose said he would see what could be done, and Fulks then paid him $300. Later, Rose told Fulks that it would not be possible to add the extra material, but persuaded Fulks to let him keep the $300.

From this testimony, we are satisfied that there is ample evidence to support the findings of both theft and bribery as against Fulks and that those

findings cannot be held to be clearly erroneous.

 Fulks challenges the sufficiency of the evidence of value to warrant his conviction of theft of property exceeding $100.00 in value. 18 U.S.C. § 641 provides:

"The word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater."

There is evidence that the gyro horizon indicators had a cost price to the United States at the time of acquisition of $205 each. It is therefore clear that value has been sufficiently proved.

Fulks protests that the value at the time of theft, as established by his bid and purchase price, was 76 cents an instrument; that § 641 should not be strictly applied in such a case. We must reject this contention. The language of the section is explicit and the congressional intent is clear.

 Fulks challenges the sufficiency of the evidence on the bribery count to establish that Rose was a government employee under 18 U.S.C. § 201. The evidence is that he was employed as a warehouseman at a United States air force base. The inference that he was in government employment is clearly available.

Other error is assigned by Fulks, all of which has been considered. We find no merit in any such assignment.

We conclude that the evidence supports the judgment of conviction against Fulks and that judgment should be affirmed.

As to appellant Miller, the government charges no theft or bribery other than those charged against Fulks. The theory of the government is that on these occasions the two defendants acted in concert. The record is wholly devoid of evidence of concerted action other than through establishing the fact that Miller was employed by Fulks.

The United States relies heavily upon an exhibit which is a list of instruments copies of which were delivered by Miller to Rose and to another warehouseman at the base, with the advice that a friend of Miller's in Los Angeles would like to purchase the listed instruments at the prices set forth. The evidence is clear that the list was prepared by and presented for a different dealer than Fulks and that Fulks had no knowledge of it. Rose himself testified that Miller had so advised him. No inference of concerted action between Miller and Fulks can therefore be drawn from this list. An inference that Miller might be disposed to engage in unlawful activity of the nature of that charged is wholly insufficient to establish his guilt of the crimes upon which he has been indicted.

We conclude that there is no evidence to support Miller's conviction of either theft or bribery; that a finding of guilt under the circumstances was clearly erroneous.

Judgment against appellant Fulks is affirmed.

Judgment against appellant Miller is reversed. The case is remanded with instructions that judgment of conviction against Miller be set aside and judgment of acquittal entered.