**UNITED STATES of America,
Appellee,**

v.

**Charles Jason QUINN, Appellant.**

**No. 72-1160.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 16, 1972.

Decided Oct. 4, 1972.

William J. Pfeiffer, Aberdeen, S. D.,
for appellant.

William F. Clayton, U. S. Atty., Sioux
Falls, S. D., David R. Gienapp, Asst. U.
S. Atty., for appellee.

Before MATTHES, Chief Judge, and
LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Charles Jason Quinn appeals from a judgment of conviction for burglary and grand larceny under 18 U.S.C. §§ 1153 and 661. The defendant is an Indian. The crimes took place in Indian country within the confines of the State of South Dakota. Quinn seeks reversal of the conviction, or in the alternative a new trial. He alleges five points of error on appeal: (1) that the trial court made certain prejudicial remarks during voir dire; (2) that the government did not establish that the stolen property exceeded $100 in value; (3) that the trial court erred in rulings on various evidence objections, the cumulative effect of which was to deny defendant a fair trial; (4) that the court erred in limiting defense counsel in his closing argument; and (5) that error was committed in failing to grant defendant's motion for judgment of acquittal at the conclusion of the government's case and at the close of all the evidence.

The defendant was accused of breaking and entering the Vine Marks' residence and stealing a 30.30 rifle, a 12 gauge shotgun and a tape recorder. No witness actually saw the defendant commit the crime. Vine Marks testified that he was away from his home from 3:00 p. m. to 7:45 p. m. on the Saturday in question. A neighbor testified that around 5:30 p. m. she saw the defendant walk towards the Marks' home and within a short time this same neighbor heard dogs barking at the Marks' residence. Another witness related that about 7:00 p. m. he saw the defendant approximately two miles from the Marks' residence in possession of the stolen goods. Additionally, the evidence showed that this same evening the defendant pledged the tape recorder as collateral for a $3 loan and gave the shotgun to a friend for obtaining some liquor. The following day, Sunday, the defendant still had the rifle in his possession and when he saw the sheriff coming up the road he ran and hid in the brush. On Monday, the defendant arrived at his aunt's home, and she testified that the defendant said he was going to use the two remaining shells before he was found. The defendant testified in his own behalf. He denied that he stole the articles; he said someone asked him to "hock" them but he did not remember who gave him the property or when. He claimed he was intoxicated at the time. The defendant admitted to having been convicted of grand larceny twice before, in 1966 and 1969.

The defendant alleges that he was prejudiced by the following remarks from the bench during defendant's voir dire examination:

[Defendant's Attorney:]

"One thing we are concerned about is the fact that Mr. Quinn is an American Indian, and they are alleging this happened on Indian land and that, accordingly, he is being charged with violation of the law of the United States. The question that we ask of you, he feels that he is a foreigner in this court and he wants to know if you, each and every one of you, can give him the same fair trial that you, yourselves, would want if you were tried by an Indian court on Indian land?

"THE COURT: Just a moment, Mr. Pfeiffer, I don't like the phrase 'he feels like a foreigner in this court'. I can say to the jury and to everyone present in this courtroom that an Indian has the same rights in this court as any other citizen of the United States, and that's true in this case and we're to look at it from that point of view. Mr. Quinn is not a foreigner; he is an American citizen and, as such, has all the rights as every American citizen has, and on that point there isn't any question. I don't believe the phrase that he feels like a foreigner in this court was quite appropriate at this time, Mr. Pfeiffer." Transcript of Voir Dire Examination at 7–8.

In the transcript of voir dire examination, the trial judge stated that there

was a time interval which permitted the jury to answer the question and that his remarks did not come until after that time interval had elapsed. The transcript also reveals that the court gave the defendant permission to further pursue the same question following the denial of the motion for mistrial.

■ We find that the defendant was not so prejudiced by the court's remarks as to necessitate a mistrial. The trial court did not disallow the defendant's question, but sought to explain to the jury that the use of the word "foreigner" was not particularly appropriate since the defendant was an American citizen entitled to the same protections as any other citizen while in federal court. We find that such an explanation is within the reasonable bounds in which a trial judge may act and did not indicate either bias or prejudice. United States v. Crawford, 444 F.2d 1404, 1405 (10 Cir. 1971), cert. denied, 404 U.S. 855, 92 S.Ct. 98, 30 L.Ed.2d 95; cf. United States v. Bessesen, 433 F.2d 861, 865 (8 Cir. 1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1254, 28 L.Ed.2d 545 (1971); Posey v. United States, 416 F.2d 545, 555 (5 Cir. 1969), cert. denied, Snowden v. United States, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); Johnson v. United States, 356 F.2d 680, 683 (8 Cir. 1966), cert. denied, 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84.

The defendant argues that the government failed to prove as a matter of law that the stolen property was in excess of $100 as required by 18 U.S.C. § 661. Vine Marks testified that he purchased the shotgun two and one-half years ago for $8. He stated that he got a good deal and in his opinion the gun is worth more than $8 and that he would sell it for more than that today. Marks paid $85 for the 30.30 rifle in 1966. Neither the shotgun nor the rifle were used in the last two and one-half years. The tape recorder was purchased in 1967 for $79 at government cost which is 25 percent off the retail list price. After five years the tape recorders are declared surplus and sold. A government worker testified that at such a sale the government would recover a very small portion of the original $79 price. The defendant contends that such testimony conclusively proves that the value of the goods could not have exceeded $100.

Although value is not defined in 18 U.S.C. § 661, Section 641 does specify certain criteria, to-wit, "the word 'value' means face, par, or market value, or cost price, either wholesale or retail, whichever is greater." Since Sections 661 and 641 are both within Chapter 31 of Title 18, it is reasonable to conclude that the definition of value under Section 641 is equally applicable to Section 661. Cf. Torres v. United States, 270 F.2d 252, 256 (9 Cir. 1959), cert. denied, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960).

■ We deem the evidence was sufficient to allow the jury to determine whether the $100 value limit had been exceeded. A jury could find that the 30.30 rifle is still worth $85 (if not more) and that the shotgun could be sold for more than $8. The fact that the tape recorder was pledged as collateral for a $3 loan does not restrict its value to $3 for purposes of 18 U.S.C. § 641.[1]

The trial court specifically instructed the jury that it was to determine if the stolen goods had a value in excess of $100. There was no objection to this instruction and under such circumstances, the jury's verdict must be accepted. McIntyre v. United States, 380 F.2d 822,

---

1. In Fulks v. United States, 283 F.2d 259, 261 (9 Cir. 1960), cert. denied, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1960), evidence was produced that the stolen government property had a cost of $205 at the time of acquisition. There was also evidence that at the time of theft the value may have declined to $61. However, the court held that value in excess of $100 had been sufficiently proved under the statute. See also Sachs v. United States, 281 F.2d 189, 191 (9 Cir. 1960), cert. denied, 364 U.S. 909, 81 S.Ct. 272, 5 L.Ed.2d 224.

825 (8 Cir. 1967), cert. denied, 389 U.S. 992, 88 S.Ct. 493, 10 L.Ed.2d 487.

■ Defendant contends that various evidential rulings by the trial court during the trial had the cumulative effect of denying defendant a fair trial. We have examined each of the rulings in question and find no prejudicial error. A substantial injury to the rights of an accused must appear before a judgment will be reversed on evidentiary grounds. Lowe v. United States, 389 F.2d 108, 112 (8 Cir. 1968), cert. denied, 392 U.S. 912, 88 S.Ct. 2072, 20 L.Ed.2d 1371.

■ Defendant contends that the defense counsel was prohibited from arguing that the defendant should have been charged with another crime rather than the crime with which he was charged and that such a limitation on his closing argument constituted error. The scope and extent of oral argument are within the sound discretion of the trial court and a new trial should not be granted unless it is clear that the court abused its discretion. It is well settled that the arguments of counsel must be confined to the issues of the case, the applicable law, pertinent evidence, and such legitimate inferences as may properly be drawn. Wakaksan v. United States, 367 F.2d 639, 646 (8 Cir. 1966), cert. denied,

386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967).

■ Counsel's argument was clearly outside the charges and evidence in the instant case. In Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245, 1248 (3 Cir. 1971), cert. denied, 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165, the court considered it improper argument for counsel to suggest that the defendant would have possible legal recourse against some third-party. See also, Evans v. United States, 98 U.S.App.D.C. 122, 232 F.2d 379 (1956). However, even assuming that it was error for the trial court to restrict defense counsel's closing argument no prejudice ensued.[2]

■ Appellant's final contention is that the trial court erred in failing to grant his motion for judgment of acquittal. It cannot be said that there exists no evidence of guilt whatsoever upon the record, or that there exists no substantial evidence from which reasonable men might say that defendant was guilty beyond a reasonable doubt. United States v. May, 419 F.2d 553, 555 (8 Cir. 1969).[3] It was not improper for the trial court to deny the motion for acquittal. See United States v. Reed, 446 F.2d 1226, 1230 (8 Cir. 1971).

The judgment of conviction is affirmed.

2. Prior to the government's objection, defense counsel *was allowed* to argue his version of the charges.

Defense Counsel: "What I am trying to tell you is that the government should have charged this fellow with what he did or with what they maybe even thought he did, but not go completely overboard and try to get him on the two worst charges they can find. I don't buy that. Maybe he is guilty of something—he sure drank a lot, I think he may be guilty of that, maybe he is guilty of trying to hock those guns he got over at the Hayes trailer, but then we can't find him guilty on these two chargs, so what have we got to do?" Record at 130–131.

See United States v. Sawyer, 143 U.S. App.D.C. 297, 443 F.2d 712, 714 (1971).

3. Even though the government's evidence is circumstantial, it is not equivocal on its face and thus is sufficient to sustain the verdict. See United States v. Wallace, 453 F.2d 420, 421 (8 Cir. 1972); United States v. Robinson, 419 F.2d 1109, 1111 (8 Cir. 1969).