**STATE of Maine**

v.

**George VIGER.**

Supreme Judicial Court of Maine.

Oct. 24, 1978.

---

Thomas E. Delahanty, II, Dist. Atty. (orally), Auburn, for plaintiff.

Hanscom & Carey, P. A. by Thomas S. Carey (orally), Rumford, for defendant.

Before McKUSICK, C. J., and WER-NICK, ARCHIBALD and NICHOLS, JJ.

ARCHIBALD, Justice.

An Oxford County jury found George R. Viger guilty of theft of property valued at more than $1000.00. 17-A M.R.S.A. §§ 351, 362. From the judgment of conviction the defendant brings this timely appeal, which we deny.

## FACTS

From the evidence presented at trial the jury would be warranted in finding the following as facts:

Three Motorola portable, two-way radios (walkie-talkies) that had been purchased for $865.00 each were stolen from the Boise Cascade paper mill in Rumford sometime between June 4, 1977, and June 6, 1977. The appellant as an employee of the Boise Cascade Company had access to the area from which the radios were stolen, and was working at the mill at the time of the theft.

Around June 10, 1977, the appellant spoke with the Rumford Fire Chief regarding the purchase of three used walkie-talkies. As vice-chairman of the Rumford Public Service Commission, the appellant was cognizant of the $1000.00 budgeted for the purchase of a hand-held, two-way radio for the fire department. Mr. Viger turned the three stolen radios over to the fire chief for inspection. At a subsequent meeting of the Commission, on a motion seconded by Mr. Viger, it was voted to purchase the radios for $700.00. Sometime later the fire chief discovered that the radios had been stolen from Boise Cascade.

The appellant maintained that he received the radios on June 6 or 7, 1977, from a person named Henry Brown who, according to the appellant, worked for Northeast Contractors. Northeast had purchased the radios for use on its construction project at the Boise Cascade mill but had been reimbursed therefor by Boise Cascade and had turned the radios over to Boise Cascade's field engineer.

The appellant argues five trial errors in support of his appeal.

### J

■ During the testimony of Boise Cascade's field engineer the State, over objection, introduced Exhibit 4, a series of invoices and other related documents generated by the purchase of the stolen radios and other affiliated equipment. In laying a foundation for the admission of Exhibit 4 into evidence, the State elicited from the

engineer only the statement that these records were "regular records kept in the course of business."

Rule 803(6), M.R.Evid.,[1] sets forth three requirements for the offer of a business record to survive an objection based upon hearsay. (1) The record must be made at or near the time of the transaction by a person with knowledge of the event. (2) The record must have been kept in the regular course of business. (3) The business must have a regular practice of making such records. In laying a foundation the State failed to show that the record had been made in the regular course of business, by one with knowledge of the transaction and at a time close to the event.

We find, however, that this error was harmless. The engineer was allowed to testify describing the purchase price of the radios. The stolen radios had serial numbers in sequential order, and the witness could identify one of the radios as the one he had used while working at Boise Cascade. Moreover, the appellant did not contest the fact that all three of the radios had, in fact, been stolen from Boise Cascade. The invoices provided no other information. The effect of the invoices, therefore, was merely cumulative, and their admission did not affect the substantial rights of the defendant M.R.Crim.P. 52(a).

## II

Over appellant's objection the engineer was allowed to state his opinion of the radios' value. Appellant argues that the engineer was not competent to do so.

We disagree.

■ The preliminary question of an expert witness' competence is for the presiding justice, and his ruling is conclusive un-

less based upon an error of law or is otherwise unjustified. *Gosselin v. Better Homes, Inc.,* Me., 256 A.2d 629, 639 (1969); *F. X. Bilodeau Realty, Inc. v. Lewiston Urban Renew. A.,* Me., 237 A.2d 398, 399 (1968). In this case the field engineer was responsible for the purchase of all equipment and supplies used by outside contractors working at Boise Cascade and, therefore, would be aware of the cost of various pieces of equipment and supplies. In fact, he testified to the purchase price of each of the stolen radios. The witness actually used one of the stolen radios and supervised the use of the others. He was, therefore, familiar with the condition of the radios and the amount of use which they had been given. Since the witness had this knowledge and an opinion as to the worth of the radios, the trial justice was not clearly erroneous in determining that he had sufficient specialized knowledge that would assist persons of ordinary experience in determining the issue of value. *State v. Ifill,* Me., 349 A.2d 176, 183 (1975).

The determination of the presiding justice, therefore, is conclusive.

### III–A

Appellant offered to prove through the testimony of the Rumford town manager that the bid procedure which Rumford utilized would have made it impossible for the appellant to realize a profit from the sale of the portable radios. The presiding justice excluded the testimony as not relevant.

■ The determination of the relevance of evidence is within the sound discretion of the presiding justice. *State v. Kelley,* Me., 357 A.2d 890, 895 (1976); *State v. Westphal,* Me., 349 A.2d 168, 171 (1975). The standard of review being the ascertainment of abuse of discretion, we find none here.

1. (6) Records of regularly conducted business. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regular conducted business, and if it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

■ Earlier testimony had revealed that the town would not utilize the bid procedure if it could buy used equipment inexpensively, such as in the situation here. Any testimony regarding the nature of the transactions which might have ensued between the town of Rumford and the appellant involving the purchase and sale of the radios, therefore, would have been purely speculative. Moreover, in attempting to demonstrate lack of any profit motive because the bid procedure supposedly made pecuniary gain by a commissioner impossible, the appellant failed to demonstrate his awareness of the procedure, an essential link in obviating any profit motive of the appellant. Obviously, one can be ignorantly motivated by profit while ultimate success is clearly impossible.

### III–B

■ The appellant also offered to prove through the testimony of an electronics equipment dealer that someone who may have been an employee of Northeast Contractors offered to sell used equipment to him at about the same time when the three radios were stolen. Viger asserted that the testimony would tend to substantiate his contention that he had innocently received the stolen radios from an employee of Northeast Contractors. The appellant offered no evidence to show that the employee from whom he purportedly received the radios was, in fact, the same person who may have been a Northeast employee and who had attempted to consummate the sale.

In excluding this evidence the presiding justice did not abuse his discretion. That there was theft of other equipment by an employee of Northeast Contractors has only a minimal tendency to prove that the three radios were also stolen by an employee of Northeast Contractors, who delivered them to the appellant. In contrast, the admission of the proffered testimony would shift the focus of the trial to extraneous events, the theft of other equipment, and would tend to

confuse the issues, mislead the jury and unnecessarily waste time. See Rule 403, M.R.Evid.

### IV

Within his summation Mr. Viger's attorney attempted to review certain portions of the testimony of the Rumford Fire Chief. On cross-examination of the chief, counsel for appellant had been allowed to go into the matter of the bid procedure utilized by the town of Rumford, but the presiding justice had correctly excluded as irrelevant similar testimony offered by appellant. Believing that counsel was attempting to argue matters not in evidence, the presiding justice instructed the jury to disregard all remarks of counsel pertaining to the processing of payments for purchased equipment and foreclosed any further argument in that vein by appellant's counsel.

■ Although the trial justice was mistaken in his reasons for restricting the argument of counsel, he was nevertheless correct in doing so. The scope and extent of oral argument is within the sound discretion of the presiding justice. *U. S. v. Quinn,* 467 F.2d 624 (8th Cir. 1972); *U. S. v. Smith,* 433 F.2d 1266 (5th Cir. 1970); 23A C.J.S. *Criminal Law* § 1095.

> It is well settled that the arguments of counsel must be confined to the *issues of the case,* the applicable law, *pertinent evidence,* and such legitimate inferences as may properly be drawn. (emphasis supplied)

*U. S. v. Quinn, supra* at 627.

The presiding justice had previously ruled that the matter of the bid procedure was irrelevant.

### V

The final point of error that the appellant raises is the instruction to the jury regarding receiving stolen property, 17-A M.R.S.A. § 359,[2] although the appellant had been

2. § 359. Receiving stolen property

   1. A person is guilty of theft, if he receives, retains or disposes of the property of another

knowing that it has been stolen, or believing that it has probably been stolen, with the intention to deprive the owner thereof.

indicted for only theft by unauthorized taking or transfer, 17-A M.R.S.A. § 353.[3] The State did not inform the appellant of its reliance upon a theory of receiving until the noon recess on the second day of a two-day trial, at which time it made the request for the instruction. Having nearly concluded the presentation of his defense at that point, the appellant contends that he was precluded from fully defending against the charge of receiving and thereby prejudiced by the lack of fair notice.

The appellant recognizes the operation of 17-A M.R.S.A. § 351[4] in consolidating all theft offenses into a single crime but asserts that the State's request for an instruction regarding receiving stolen property constituted surprise. Although Section 351 looks to the granting of a continuance or other appropriate relief if the conduct of the defense would be prejudiced, the appellant neither requested nor was granted a continuance or other relief. The appellant maintains, however, that any relief other than a new trial would have been insufficient due to the timing of the State's request, which came almost at the conclusion of the defense.

We disagree with the very premise of appellant's argument that he was surprised by the request.

Although a defendant might be surprised at the *theory* of the theft, or *facts* that the State seeks to prove, we do not believe that the appellant could reasonably have been surprised to learn what *law* was applicable to the facts shown by the State. In proving the essential elements of theft by unauthorized taking, the State must necessarily prove the essential elements of theft by receiving stolen property.[5] The State, therefore, never altered the *facts* that it intended to prove, and the appellant was not surprised by any evidence that the State presented. This situation is in contrast with a case in which the State might desire to alter its theory from unauthorized taking to theft by deception, 17-A M.R.S.A. § 354, or theft by extortion, 17-A M.R.S.A. § 355, which would involve a significant

---

2. As used in this section, 'receives' means acquiring possession, control or title, or lending on the security of the property. For purposes of this section, property is 'stolen' if it was obtained or unauthorized control was exercised over it in violation of this chapter.

3. § 353. Theft by unauthorized taking or transfer

1. A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.

2. As used in this section, 'exercises unauthorized control' includes but is not necessarily limited to conduct heretofore defined or known as common law larceny by trespassory taking, larceny by conversion, larceny by bailee and embezzlement.

4. § 351. Consolidation

Conduct denominated theft in this chapter constitutes a single crime embracing the separate crimes such as those heretofore known as larceny, larceny by trick, larceny by bailee, embezzlement, false pretenses, extortion, blackmail, shoplifting and receiving stolen property. An accusation of theft may be proved by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the information or indictment, subject only to the power of the court to ensure a fair trial by granting a continuance or

other appropriate relief if the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

5. The elements of theft by unauthorized taking are (1) the *obtaining* or exercising of unauthorized control over another's property, and (2) the *intent to deprive* the owner thereof. 17-A M.R.S.A. § 353(1).

(1) Receiving, retaining or disposing of property of another (which is an exercise of unlawful control thereof), (2) knowing or believing that the property is stolen, and (3) the intent to deprive the owner thereof are the elements of Section 359.

Here, the jury must have found "theft" by drawing an inference from defendant's possession of recently stolen goods and, therefore, by satisfying the requirements of unauthorized taking, the evidence also supplied the element of receiving. Since "stolen" property is defined as property over which unauthorized control has been exercised, the inference justifying the conclusion that unauthorized control has been exercised simultaneously established that the person who is in possession of the recently stolen goods knows that there has been an exercise of unauthorized control.

The code did not attempt to designate what is an included offense, see 17-A M.R.S.A. § 13, *comment,* but Section 351 recognizes the substantial overlap of theft offenses.

difference in the proof required. In this latter case a defendant might be justifiably surprised, and it is this type of occurrence to which Section 351 speaks and demands a continuance or other appropriate relief.

We find no error in the justice's instruction.

The entry is:

Appeal denied.

POMEROY, DELAHANTY and GODFREY, JJ., did not sit.