Jordan & Goodridge by Donald H. Goodridge, Houlton (orally), for defendants.

**STATE of Maine**

v.

**David SEAMANS and Charles Little.**

Supreme Judicial Court of Maine.

Oct. 24, 1979.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY, NICHOLS and GLASSMAN, JJ.

WERNICK, Justice.

Defendants David Seamans and Charles Little have appealed from judgments of conviction entered against them, respectively, in the Superior Court (Aroostook County) after the Justice presiding in a jury-waived trial found each of them guilty as charged, by separate indictment, of "aggravated criminal mischief", in violation of 17–A M.R.S.A. § 805(a)(C).[1] The sole point asserted on appeal is that the evidence failed to establish one of the essential elements of the crime charged. Stated more in detail, the contention is that even if defendants "intentionally or knowingly . . . tamper[ed]" with two fire alarms in Houlton, knowing that they had no right to do so because the alarms they were sending were false, the evidence failed to show that the Houlton Fire Department was in

---

1. As pertinent, here, 17–A M.R.S.A. § 805 provides:

 "*1.* A person is guilty of aggravated criminal mischief if he intentionally or knowingly:

 ". . .

"*C.* Damages, destroys or tampers with the property of a . . . fire department . ., having no reasonable ground to believe that he has a right to do so, and thereby causes a substantial interruption or impairment of service rendered to the public; . . .."

any way hindered in dealing with an actual fire, and therefore the State did not prove that defendants "cause[d] . . . interruption or impairment of [fire] service rendered to the public."

We deny the appeals.

About 9:30 p. m. on June 3, 1978 defendants Seamans and Little, and several other persons, were riding in an automobile operated by Seamans on Bowdoin Street in Houlton, when Seamans drove up to a fire alarm box to enable defendant Little to pull the alarm, which Little did. Seamans and Little both knew that there was no fire requiring an alarm to be given and that they were transmitting a false fire alarm. Shortly thereafter, Seamans drove the automobile to another area where he stopped at a second fire alarm box to permit Little to activate it. Again, Little pulled the fire alarm, and, again, both Seamans and Little knew that they were sending a false alarm.

The Houlton Fire Department promptly responded to the two alarms by dispatching two pump trucks and a ladder unit and calling out one hundred percent of the Department's available firefighters.

■ Defendants' contention on appeal is that there is no violation of Section 805(1)(C) where, as here, by responding to a false alarm, a Fire Department has not been subjected to any hindrance in responding to, or fighting, any actual fire. In support of their position defendants advert to the less severely punishable crime of "criminal mischief" as defined in 17–A M.R. S.A. § 806(1)(B). They argue that the language there used, "*recklessly creates a risk* of interruption or impairment of services rendered to the public", (emphasis added) reveals legislative intendment that where, as here, no actual fire happens to be involved, defendants' conduct in sending false fire alarms can constitute only the less severely punishable crime of "criminal mischief."

We reject the hidden premise that underlies defendants' argument, the assumption that fire "service rendered to the public" is "interrupted or impaired" only if the acts of defendants hinder the Fire Department in dealing with some actual fire. That this would be a wrong interpretation of the phrase "service rendered to the public" in Section 805(1)(C) is shown by the Comment to that Section. The Comment explains that the source of Section 805 is Section 6 of Chapter 266 of the Proposed Criminal Code for Massachusetts. In that proposed code "services" is defined as "benefit resulting from labor, skill or time of another or from the use of property . . . ." Proposed Criminal Code of Massachusetts, Chapter 266 § 1(1). Taking this definition as the model for the meaning of the word "service" in Section 805(1)(C), we discern a legislative intendment that "service rendered to the public", relative to fire protection, has the broader meaning of including the benefit to the general public which arises simply from the existence of a fire fighting system that is continuingly maintained ready and equipped to confront any emergency from fire.

This same thought is conveyed by the further discussion in that portion of the Comment to Section 805 which makes the point, relevant to our present analysis, that the evil against which Section 805(1)(C) guards, and which is not the target of Section 806(1)(B), is "great *inconvenience* to the public *at large.*" (emphasis added). The use of the word "inconvenience", and the reference to the public by the additional words "at large", to describe the evil connoted by "causes . . . interruption or impairment of service rendered to the public", strongly suggest a more comprehensive concept than one confined to the *danger* to particular individuals constituting a defined *segment* of the public arising where a fire department is "interrupted or impaired" in dealing with some actual fire. The thrust of "inconvenience" and public "at large" would plainly embrace the broader idea of the absence of a *real danger* and the *more generalized* nature of public injury that occurs when, in responding to false alarms in circumstances where by good fortune no actual fire happens to break out, a fire department is disturbed in its status of being maintained as diligently ready, and

effectively equipped, to protect the public against any fire that might arise.

We conclude that, within the contemplation of Section 805(1)(C), an "interruption or impairment of service rendered to the public" occurs when personnel and equipment of a fire department are dispatched to respond to a false fire alarm, even though the response does not happen to hinder the department in fighting some actual fire.

This being the proper interpretation of the language in Section 805(1)(C), the evidence in this case plainly establishes that defendants' tampering with the fire alarms "cause[d] . . . interruption or impairment of service rendered to the public."

 The evidence was also sufficient to establish the other requirement of Section 805(1)(C), that such interruption or impairment be "substantial."[2] The dispatching of three fire trucks and the calling out of one hundred percent of the Department's available personnel to answer false alarms is patently a "substantial" obstruction of the Department's state of readiness promptly and effectively to respond to any actual fire that might arise while the equipment and firefighters have been thus diverted.

The entry is:

Appeals denied.

Judgments of conviction affirmed.

McKUSICK, C. J., did not sit.

---

**2.** "Aggravated criminal mischief" is a Class C crime and can thus be severely punished where the circumstances so warrant. It must not be overlooked, then, and we stress the point, that when the crime is charged in the facet involved here, the *substantiality* of the interruption or impairment of service is an essential element of the crime, and all the facts necessary to constitute "substantiality" must be proved beyond a reasonable doubt.