**STATE of Maine**

**v.**

**John EDWARDS and Michael Willings.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 22, 1996.

Decided Aug. 8, 1996.

David W. Crook, District Attorney, James M. Cameron, Assistant District Attorney, Augusta, for the State.

C.H. Spurling, Augusta, for John Edwards.

Deborah L. Potter, Auburn, for Michael Willings.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

In this consolidated appeal, John Edwards and Michael Willings appeal from the judgments entered in the Superior Court (Kennebec County, *Marden, J.*) following a jury-waived trial finding each of them guilty on one count of aggravated criminal mischief pursuant to 17–A M.R.S.A. § 805(1)(A) (Supp.1994) (Class C),[1] and one count of aggravated criminal mischief pursuant to 17–A M.R.S.A. § 805(1)(C) (1983) (Class C). The defendants contend, *inter alia,* that the court erred by (1) admitting inadmissible hearsay evidence regarding the value of items damaged or destroyed in a jail disturbance; (2) finding that the State had proved beyond a reasonable doubt all elements of the offenses charged; and (3) applying accomplice liability. We discern no error, and affirm the judgments.

This case arises out of a disturbance that began on the evening of December 18, 1994 at the Kennebec County Jail in Augusta. The four inmates of "C–Block," including Edwards and Willings, refused to "lock up" for the night. Their recalcitrance apparently stemmed from a grievance related to an on-going lack of hot water for showers at the facility, as well as a desire on the part of Edwards and Willings to be transferred to the Cumberland County Jail. At approximately 11 p.m. that evening, the jail guards informed the inmates that it was time to return to their individual cells and be locked-down for the night. The inmates prevented

the guards from entering the block, however, and proceeded to forcibly remove a telephone and television from the wall, kick a coffee pot about the block, and destroy a bulletin board hanging on the wall. They also carried bedding from their individual cells and used it to barricade the door to the block, and poured water on the floor in order to create a hazard to the guards. The cellblock's windows were covered with paper to obscure the guards' view. Portions of the disturbance were recorded on a security camera in the cellblock. The confrontation continued throughout the night and, by early morning, a tactical team of sheriff's deputies was present at the scene, as were members of the jail's administration and the Augusta Fire and Police Departments. The inmates finally surrendered to the authorities at approximately 5:30 a.m. on December 19, 1994.

Edwards and Willings were indicted on three counts: aggravated criminal mischief in violation of 17–A M.R.S.A. § 805(1)(A) for damaging or destroying property valued in excess of $1000; aggravated criminal mischief in violation of 17–A M.R.S.A. § 805(1)(C) for causing a substantial interruption or impairment of a law enforcement agency's services to the public; and conspiracy to commit aggravated criminal mischief in violation of 17–A M.R.S.A. § 151 (1983).

At their jury-waived trial, the State called as a witness Corrections Officer Conrad Michaud, the superintendent of maintenance at the jail, as well as Captain Kenneth Fore, the jail administrator. Michaud testified to having prepared an estimate of destroyed or damaged materials resulting from the incident, and stated that he personally received bills for work that had been completed[2] or obtained price estimates via the telephone. Michaud testified that such estimates were reasonable costs for replacing or repairing the destroyed or damaged property. Fore testified likewise. Over Edwards's objection,

---

1. Edwards and Willings both were charged and convicted under the 1994 version of 17–A M.R.S.A. § 805(1)(A) which, unlike the current version of the statute, required for a conviction of aggravated mischief proof of damages exceeding $1000. The current version of the statute requires proof of damages exceeding $2000. 17–

A M.R.S.A. § 805(1)(A) (Supp.1995), *amended by* P.L.1995, ch. 224, § 8.

2. Much of the replacement work had been completed at the time of the trial, and the testimony therefore was directed to the actual cost.

the trial court ruled that such evidence was not hearsay. Both defendants were found guilty by the court on the two counts of aggravated criminal mischief, but were acquitted on the conspiracy count.[3] As part of their sentences, Edwards and Willings were ordered jointly and severally to pay $1,598.14 in restitution to Kennebec County. Edwards subsequently filed a motion for findings of fact, which the court granted and later issued in the form of an itemization of the property destroyed or damaged and its value. Both defendants filed notices of appeal from the judgments.

## I.

■■■■ The defendants contend that the court erroneously allowed in evidence Michaud's testimony and a State's exhibit regarding the value of property destroyed or damaged in the cellblock.[4] They argue that such evidence was inadmissible hearsay because Michaud testified based on actual bills submitted to the county, or from estimates he obtained via the telephone, and did not himself investigate the fair market value of any necessary replacements or the cost of repairing such property. We are unpersuaded by this contention. The court found that Michaud qualifies as an expert pursuant to M.R.Evid. 702, and a witness's expert opinion may be based on facts or data not otherwise admissible in evidence. M.R.Evid. 703. "The preliminary question of an expert witness'[s] competence is for the [trial court], and [its] ruling is conclusive unless based upon an error of law or is otherwise unjustified." *State v. Viger*, 392 A.2d 1080, 1083 (Me.1978) (citations omitted).

Michaud's employment as the superintendent of maintenance at the jail, a position making him responsible for the purchase and replacement of equipment and supplies, qualifies him as competent to render an opinion as to the property's value, regardless of whether such opinion stems from market sources or personal experience. *See State v. Atkinson*, 458 A.2d 1200, 1204 (Me.1983) (expert's opinion of value of stolen tractor, based on his experience with similar tractors and photos, held not to be based on speculation); *State v. Doray*, 359 A.2d 613, 614–15 (Me.1976) (owner of stolen stamp collection properly testified at defendant's trial as to replacement cost of stamps despite fact that his opinion of value might have derived from such sources as trade journals). Moreover, Michaud is an agent of Kennebec County, the owner of the property, and an owner of property is competent to testify to the property's fair market value. The weight to be accorded such testimony is left to the factfinder. *Walters v. Petrolane–Northeast Gas Service, Inc.*, 425 A.2d 968, 974 (Me. 1981); *State v. Thibeault*, 390 A.2d 1095, 1102–03 (Me.1978). Accordingly, the trial court did not err in admitting evidence related to the value of the destroyed property.

## II.

■■■■ The defendants' contention that their convictions must be reversed because the State failed to prove damages in excess of $1000 is without merit. The weight to be accorded to evidence and determinations of witness credibility are within the exclusive province of the factfinder. *State v. Glover,*

---

3. In announcing its rulings, the court stated its findings that all inmates had aided in moving bedding to obstruct the door and worked as a group to avoid the lock-down. Edwards specifically was found by the court to have papered the windows, and Willings was found to have banged the wall and aided in damaging the television. The court expressly found that the two had been accomplices. The court determined the total damage to the cellblock to be $1,598.14, basing the amount on the destruction and damage done by Edwards and Willings to the cellblock's television set, outlet plates, coffee pot, bulletin board, rule books, floor tiles, paint, hinges, and windows.

4. Although the trial court ruled that the evidence was admissible because it qualified for the business records exception pursuant to M.R.Evid. 803(6), the State made no genuine effort to satisfy the requirements of this exception to the rule against hearsay. We conclude that the State failed to lay a proper foundation for introduction of the evidence as a business record, M.R.Evid. 803(6), and that the admission of such evidence on that ground by the trial court was error. Such error was harmless, however, because Michaud had personal knowledge of the value of the property, M.R.Crim.P. 52(a); *State v. Viger*, 392 A.2d 1080, 1083 (Me.1978), and qualifies as an expert pursuant to M.R.Evid. 702.

594 A.2d 1086, 1088 (Me.1991). The court found that damage to the jail property totalled $1,598.14, and that Edwards and Willings contributed significantly to such damage. Based on Michaud's testimony and other evidence, the court was amply justified in determining the property's value.

### III.

■ The defendants also contend that the court erred in finding that the Kennebec County Correctional Facility is not a "law enforcement agency" within the meaning of 17-A M.R.S.A. § 805(1)(C) [5] for purposes of the statute. This contention is without merit.

A publicly-funded facility that houses inmates while such inmates serve court-imposed sentences, restores order following disturbances such as the one involved in the case at bar, and is a division of the county sheriff's office, qualifies as a governmental agency involved in enforcing the law.[6]

### IV.

■ Edwards additionally contends, also without merit, that the court erred by finding that a "substantial interruption or impairment of services rendered to the public" occurred pursuant to section 805(1)(C). *See infra* n. 5. The jail disturbance caused a substantial impairment of the jail operation, itself a service rendered to the public. In addition, such conduct required the presence of extra Sheriff Department personnel, as well as municipal police and fire department personnel. In *State v. Seamans*, 407 A.2d 13 (Me.1979), we affirmed the conviction of a defendant who was charged with aggravated criminal mischief for reporting false alarms when, by responding to such alarms, the fire department was not subjected to any *actual* hindrance in responding to other actual fires. *Seamans*, 407 A.2d at 15. In that case, we articulated a broader idea of "danger" and "the public," and held that the impairment of an agency's ability to respond to a *potential* emergency may constitute "substantial impairment" for purposes of the statute. *Id.* at 14–15.

### V.

■ Defendants finally contend that there was insufficient evidence in the record to support the court's findings with respect to their liability as accomplices. We disagree. An "accomplice" is liable for the acts of another if he solicits another person to commit a crime, or aids or agrees to aid, or attempts to aid such other person in planning or committing a crime with the intent of promoting or facilitating the commission of a crime. 17-A M.R.S.A. § 57(3)(A) (1983). A person may be an accomplice to any crime the commission of which was a reasonably foreseeable consequence of his conduct. *Id.* The record discloses that both Edwards and Willings acted in concert with their fellow cellblock inmates by encouraging collective

---

**5.** 17-A M.R.S.A. § 805(1)(C) (1983) provides:

   **1.** A person is guilty of aggravated criminal mischief if he intentionally or knowingly:

    . . . .

    **C.** Damages, destroys or tampers with the property of a *law enforcement agency*, fire department or supplier or gas, electric, steam, water, transportation, sanitation or communication services to the public, having no reasonable ground to believe that he has a right to do so, and thereby causes a *substantial interruption or impairment of service rendered to the public;* . . .

(Emphasis added.)

**6.** Edwards's reliance on our recent holding in *Struck v. Hackett*, 668 A.2d 411 (Me.1995), is unavailing. Contrary to his contention, *Struck* does not stand for the proposition that corrections officers may not be classified as part of a law enforcement agency for purposes of the statute. In *Struck*, the distinction we made between the Kennebec County Jail's corrections and law enforcement divisions was in the context of an asserted property right stemming from an employment contract. *Id.* at 417–18. That the definition of "law enforcement officer" set forth in 17-A M.R.S.A. § 2(17) (1983) does not appear explicitly to include a corrections officer does not mean that, by analogy, a county jail itself cannot be considered a "law enforcement agency." Indeed, other parts of the Maine Criminal Code suggest the opposite. *See* 17-A M.R.S.A. § 107 & comment (1983) (law enforcement officers justified in using nondeadly force to prevent a prisoner's escape from custody; justification for use of force in correctional facilities).

 

acts of disobedience and committing separate acts of vandalism. Once a defendant's presence at the scene has been proven, the State may point to any conduct on the part of the defendant that promotes or facilitates, however slightly, the commission of the crime. *State v. Libby,* 435 A.2d 1075, 1077 (Me. 1981). This the State did.

The entry is:

Judgments affirmed.

All concurring.