**Joseph WAKAKSAN, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18203.**

United States Court of Appeals Eighth Circuit.

Oct. 31, 1966.

---

Harold A. Dronen, Fargo, N. D., for appellant.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for appellee. John O. Garass, U. S. Atty., Fargo, N. D., was with him on the brief.

Before VOGEL, Chief Judge, MEHAFFY, Circuit Judge, and Mc-MANUS, District Judge.

McMANUS, District Judge.

This is an appeal in *forma pauperis* from a jury conviction for voluntary manslaughter under 18 U.S.C.A. § 1112 [1] The indictment charged appellant with killing Ida Poorbear, upon a sudden quarrel and in heat of passion, by stabbing her with a knife at Tokio, North Dakota on the Devils Lake Sioux Indian Reservation, where appellant was an enrolled Indian. Appellant was sentenced to nine years imprisonment.

Claimed errors in the trial court are:

I. Prejudicial admission of an involuntary, signed statement, obtained dur-

1. "(a) Manslaughter is the unlawful killing of a human being without malice * -- *.
 Voluntary—Upon a sudden quarrel or heat of passion.
 *　　*　　*　　*　　*

"(b) Within the special maritime and territorial jurisdiction of the United States,
"Whoever is guilty of voluntary manslaughter, shall be imprisoned not more than ten years; * * *"

ing illegal detention, and without advice of constitutional rights.

II. Prejudicial admission in evidence of a prior criminal conviction.

III. Denial of motions for mistrial based on prejudicial testimony of government psychiatrist and prejudicial closing argument.

We affirm.

Appellant, a 57 year old Indian, and Ida Poorbear lived together as husband and wife. They were also known as Joe and Ida Andrews. On February 2, 1965, after drinking heavily, and while alone in the home of appellant's sister, on the Devils Lake Sioux Indian Reservation, they fought with a knife during a quarrel over appellant's alleged infidelity. Ida was fatally stabbed in the chest, her body being found in the house the next day. Appellant wandered away from the scene and was later hospitalized until March 2, 1965 because of three knife wounds received in the fight.

While in the hospital on February 5, 1965, he made a statement pertaining to Ida's death which was admitted in evidence at the trial without objection. On March 2, 1965, after his release from the hospital, appellant was arrested on an earlier liquor violation of the Tribal Code. Without counsel, he was brought before the tribal judge on March 5, 1965, plead-

ed guilty and was sentenced to 30 days in jail. During this detention, on March 11, 1965, he voluntarily submitted to a lie detector test in Bismarck, North Dakota concerning the details of Ida's death, thereafter giving a recorded and signed statement to Captain Frank Brave Bull of the Bureau of Indian affairs.[2] After giving the statement, appellant was immediately brought before a United States Commissioner and charged with the crime which is the subject of these proceedings. Error is claimed in the admission of this March 11th confession.[3]

## I.

In a separate hearing on a motion to suppress the confession, the trial judge found that the confession was voluntary, appellant had been advised of his rights, and he had not been illegally detained.[4] We will discuss each of these points.

## INVOLUNTARINESS

In accordance with the views of the trial court, we find no evidence of threats, promises or coercion to support appellant's claim. Essentially his claim is that due to his feeble health, lack of education and unstable mental condition and due to the events surrounding the interrogation, the statement given was coerced. Appellant alleges there was a successful attempt to overwhelm him by a carefully

2. Mr. Granrud, a special state agent who gave the test testified:

"Prior to the test he asked, he said that he wanted to take this test so he could find out himself if he was guilty or innocent of this thing; and I said that, I indicated that this was not a miracle machine, if he didn't know at this time. I or the machine could not clarify whether he had done this, if he didn't know himself. So after I finished running the test, I told him, "Joe, according to the questions I have asked and the reactions I have found on the chart, it indicates you are not telling me the truth." Appellant stated, "O.K. I guess I must have done it then."

3. The statement elicited on March 11, 1965, was clearly incriminating and subject to the limitations herein urged. Escobedo v. State of Illinois, 378 U.S. 478, 479, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1963);

Mallory v. United States, 354 U.S. 449, 453, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); McHenry v. United States, 308 F.2d 700 (10th Cir. 1962).

4. The trial judge stated:

"From the evidence adduced, this Court is completely satisfied that the Defendant, Joseph Wakaksan, Jr., had been fully advised of his right to remain silent, his right to consult counsel, and that any statement he gave could be used against him. It is clear from the evidence that the confession obtained from the defendant, Wakaksan, was voluntarily and freely given."

\* \* \* \* \*

"This Court finds that there is no taint of illegality surrounding the defendant Wakaksan's arrest, confession or indictment; and that there were neither threats, promises, or coercion in any manner used on the Defendant, Wakaksan."

designed plan which resulted in an involuntary statement.

■■■■ In determining whether the confession was voluntary, close scrutiny of the facts of each individual case is the necessary approach and the totality of circumstances dictates the decision. Gallegos v. State of Colorado, 370 U.S. 49, 52–55, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); Spano v. People of State of New York, 360 U.S. 315, 321–323, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Mitchell v. Stephens, 353 F.2d 129, 140 (8th Cir. 1965). Both the judge and the jury were presented with the issue of voluntariness and it is apparent that neither found any coercion exercised on appellant. Taking the view of the evidence which most strongly supports the findings in the trial court, as we must, the evidence definitely does not establish conclusively and as a matter of law that the confession was involuntary. Birnbaum v. United States, 356 F.2d 856, 865 (8th Cir. 1966); Mitchell v. Stephens, supra; Thompson v. Cox, 352 F.2d 488 (10th Cir. 1965). The finding as to voluntariness is fully supported by the evidence and will not be disturbed. Thomas v. Commonwealth of Virginia, 357 F.2d 87, 90 (4th Cir. 1966); Redmon v. United States, 355 F.2d 407, 411 (9th Cir. 1966).

## CONSTITUTIONAL RIGHTS

■■■■ Appellant's next contention is that he was not timely warned of his right to remain silent and his right to counsel and that he did not competently and intelligently waive those rights. The Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 1765 (1963), set up guidelines for when the accused should be warned of his constitutional rights and allowed an attorney.[5] The court stated:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime

but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment.' Gideon v. Wainwright, 372 U.S. [335], at 342 [83 S.Ct. 792, at 795, 9 L.Ed.2d 799], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

The Supreme Court further noted 378 U.S. at page 492, 84 S.Ct. at page 1766:

"* * * We hold only that when the process shifts from investigatory to accusatory—when line its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

■■■■ The accusatory stage in the instant case had not attached until the time the statement was to be taken on March 11, 1965. In *Escobedo*, there was no doubt that a murder had been committed, and the investigation had focused on Escobedo. In the instant case no charge had been lodged against the appellant and no one was sure a crime had been committed. Captain Brave Bull stated that he didn't suspect the appellant until he obtained the statement of March 11, 1965. The lie detector test was given to determine whether the appellant had guilty knowledge concerning the stabbing death of Ida Poorbear. Where the officers are merely trying to ascertain the

5. Since the trial date in the instant case was October 18, 1965, well before the Supreme Court handed down Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the guide-lines set forth therein are not to be applied. Johnson v. State of New Jersey, 384 U.S. 719, 721, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966).

facts to see if a federal crime has been committed, the accusatory stage has not yet begun. Birnbaum v. United States, supra, 356 F.2d at 863; Miller v. United States, 354 F.2d 801, 813 (8th Cir. 1966); United States v. Robinson, 354 F.2d 109, 114–115 (2d Cir. 1965); United States v. Konigsberg, 336 F.2d 844, 853 (3d Cir. 1964).

There was testimony by Mr. Granrud and Captain Brave Bull that before the lie detector test Mr. Granrud advised the appellant that he had a right to remain silent and was entitled to an attorney. Captain Brave Bull also testified that before he took the statement he also advised appellant of his right to counsel, his right to remain silent, and told him that any statement he made might be used against him.[6] The appellant's testimony conflicted on these points.

■ We think the instant case is clearly distinguishable from *Escobedo* where the accused requested and was denied counsel and was not effectively warned of his right to remain silent. Assuming the accusatory stage of interrogation had begun when appellant made the statement of March 11, 1965, there is sufficient evidence to support the trial court's ruling that appellant was fully advised of his constitutional rights and voluntarily confessed. Birnbaum v. United States, supra, 356 F.2d at 864. Apparently the trial court believed the testimony of the officers. Davidson v. United States, 349 F.2d 530, 534, (10th Cir. 1965). There is no absolute rule that a confession made without counsel

violates the Sixth Amendment rights. Hays v. United States, 347 F.2d 668, 669–670 (8th Cir. 1965). Where, as here, appellant was warned of his constitutional rights and voluntarily made a statement and signed it, his constitutional rights have not been violated. Whiteside v. United States, 346 F.2d 500, 505–506 (8th Cir. 1965); United States v. Drummond, 354 F.2d 132, 147–148 (2d Cir. 1965); Commonwealth of Pennsylvania v. Maroney, 348 F.2d 22, 31–32 (3d Cir. 1965).

## ILLEGAL DETENTION

■ The statement of March 11, 1965, was taken while appellant was in detention resulting from the liquor conviction of the tribal court. Appellant argues that the conviction and detention were illegal since he was arrested three days before he was brought before the tribal court [7] and counsel was not provided for him.[8] Appellant contends that any statement made during this alleged illegal detention would be inadmissible even though it concerned another crime.

■ Here appellant was being legally detained by tribal authority, and his rights were not violated. Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed. 2d 251 (1958); Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1895); Native American Church v. Navajo Tribal Council, 272 F.2d 131 (10th Cir. 1959); Barta v. Oglala Sioux Tribe of Pine Ridge Reservation, 259 F.2d 553, 556–557 (8th Cir. 1958); Iron Crow v. Oglala Sioux Tribe of Pine Ridge Reser-

---

6. Testimony showed also that the statement was read to the defendant before he signed and it contained in part as follows: "I make this following statement of my own free will without any threats or duress and without promise or hope of any reward of any kind. I know that I am not required to make any statement and I know that any statement that I make may be used against me or any person in any court of law."

7. We note in passing that the tribal judge worked only on Mondays and Fridays. The appellant was arrested on Tuesday, March 2, and brought before the tribal judge on Friday, March 5. The delay was

not to furnish an opportunity for further interrogation or to elicit any damaging statements and none was elicited. We do not think that under the circumstances the delay was shown to have any hint of illegality. See Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957); Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948); McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942).

8. Testimony showed that the Tribal Code prohibited the appearance of professional attorneys in criminal cases.

vation, 231 F.2d 89 (8th Cir. 1956); Toledo v. Pueblo De Jemez, 119 F.Supp. 429 (D.N.M.1954). Where defendant is legally detained on a conviction of a crime and the police are not certain of his guilt of a second crime, he can be questioned and a statement may be taken without violating the *McNabb* rule. United States v. Carignan, 342 U.S. 36, 43, 72 S.Ct. 97, 96 L.Ed. 48 (1951); Stille v. United States, 354 F.2d 233 (10th Cir. 1965); Easley v. United States, 333 F.2d 75 (10th Cir. 1964); Davis v. State of North Carolina, 339 F.2d 770, 777–778 (4th Cir. 1964).

We also note that when appellant made the statement on March 11, 1965, he was voluntarily participating and not under arrest on any charge for causing the death of Ida Poorbear. Hence, the *McNabb* rule would not apply to render inadmissible any statement he made at that time. See Rule 5, F.R.Crim.P.; United States v. Carignan, supra; Hutcherson v. United States, 122 U.S.App.D.C. 51, 351 F.2d 748, 750 (1965); Scarbeck v. United States, 115 U.S.App.D.C. 135, 317 F.2d 546, 563 (1963). Once the facts of the manslaughter charge were determined by appellant's statement of March 11, 1965, he was taken immediately before a United States Commissioner and charged. There was no abuse of his rights under these facts. See Birnbaum v. United States, supra, 356 F.2d at 864; Young v. United States, 344 F.2d 1006 (8th Cir. 1965); Ralph v. Pepersack, 335 F.2d 128, 139 (4th Cir. 1964).

### II.

Over appellant's objection of prejudice and irrelevancy, the trial court admitted testimony of his previous conviction of assault and battery against the deceased. As grounds for admission the prosecution stated the evidence went to "the motive, the intent and the lack of mistake herein."

 If there is a genuine issue in the case as to identity, motive, intent, preconceived plan or absence of mistake or accident, relevant evidence of other crimes is generally admissible. Buatte

v. United States, 350 F.2d 389, 395 (9th Cir. 1965); Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 89–90 (1964); Kempe v. United States, 151 F.2d 680, 688 (8th Cir. 1945). But there must appear to be some real connection between the earlier conviction and the alleged crime beyond the allegation that both acts spring from a vicious disposition. Lovely v. United States, 169 F.2d 386 (4th Cir. 1948); Neff v. United States, 105 F.2d 688, 691–692 (8th Cir. 1939); Niederluecke v. United States, 21 F.2d 511 (8th Cir. 1927). Unless it is clear that the questioned evidence has no bearing upon any of the issues involved, this determination is left to the discretion of the trial judge. Kempe v. United States, supra, 151 F.2d at 687–689; Neff v. United States, supra; Hardy v. United States, supra.

 Voluntary manslaughter is an unlawful, intentional killing committed without malice aforethought, while in a sudden heat of passion due to adequate provocation. At the trial, appellant urged in his defense the issues of insanity, self-defense and accidental death. An essential element of the prosecution's case was to establish that the appellant intentionally caused the death of the victim. The evidence of the previous assault and battery between the same parties was relevant to show appellant's state of mind and probable intent. Swann v. United States, 195 F.2d 689 (4th Cir. 1952); Connell v. State, 39 Ala.App. 531, 105 So.2d 695, 700 (1958); State v. Lawrence, 72 Nev. 286, 303 P.2d 704 (1956). The prior relationship between the parties, as evidenced by the assault and battery, was also relevant to show motive, the identity of the aggressor, and absence of any mistake or accident. Weiss v. United States, 122 F.2d 675, 682–685 (5th Cir. 1941); State v. La Vallee, 104 N.H. 443, 189 A.2d 475, 479 (1963); State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 922–923 (1947); Harrell v. State, 43 Okl.Cr. 278, 278 P. 404, 405 (1929). By arguing self defense the appellant's possible motives and mental attitude toward the victim become es-

**646**

pecially important. Bailey v. State, 41 Ala.App. 39, 123 So.2d 304 (1960); Ross v. State, 234 Miss. 309, 106 So.2d 56, 58 (1958); People v. Hall, 27 Cal.App.2d 440, 81 P.2d 248, 250 (1938).

### III.

 A psychiatrist testified that within a reasonable degree of medical certainty his opinion was that defendant had a personality pattern disturbance. In a later, unresponsive answer the psychiatrist stated that if patients with personality pattern disturbances, were involved with the law they were usually involved in repeated episodes. Defendant objected on the grounds the answer indirectly inferred defendant had prior convictions and he moved for a mistrial. The testimony objected to was incidental, inadvertent and stricken from the record. Ordinarily, the motion for mistrial is addressed to the sound discretion of the trial judge, and we find no abuse here. White v. United States, 279 F.2d 740, 749 (4th Cir. 1960); Reistroffer v. United States, 258 F.2d 379, 393 (8th Cir. 1958); United States v. Dillinger, 341 F.2d 696 (4th Cir. 1965); United States v. Gosser, 339 F.2d 102, 112–113 (6th Cir. 1964).

The prosecution had introduced into evidence at the trial defendant's recitation of the events surrounding the death of the victim, which included statements of the defendant that the victim had stabbed him. In his closing argument, the prosecuting attorney suggested the defendant's wounds, allegedly caused by the deceased, might have been self-inflicted. The defense moved for a mistrial on the grounds the statement was prejudicial and improper and impeached the prosecution's own evidence. The court overruled the motion.

The arguments of counsel must be confined to the issues of the case, the applicable law, pertinent evidence, and such legitimate inferences as may properly be drawn therefrom. London Guarantee & Accident Co. v. Woelfle, 83 F.2d 325, 342 (8th Cir. 1936); Casso v. Pennsylvania R. R., 128 F.Supp. 909,

917 (W.D.Pa.1954). When confined to the evidence or reasonable inferences, the arguments of counsel are not to be too narrowly limited. Wagner v. Pennsylvania R. R., 282 F.2d 392, 396 (3d Cir. 1960); Chapman v. Alton R. Co., 117 F.2d 669, 672 (7th Cir. 1941). We are of the view that the remarks were not prejudicial and fell within the permissible bounds of legitimate responsive argument. Luomola v. United States, 301 F.2d 138 (9th Cir. 1962); cf. Isaacs v. United States, 301 F.2d 706, 738 (8th Cir. 1962); Myres v. United States, 174 F.2d 329, 339 (8th Cir. 1949); Fowler v. United States, 352 F.2d 100, 110 (8th Cir. 1965).

The judgment is affirmed.