UNITED STATES of America, Appellee,

v.

Don Lyndall ROBBINS, Appellant.

No. 79–1403.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1979.

Decided Nov. 29, 1979.

Rehearing Denied Dec. 28, 1979.

John W. Parkerson, Glover, Sanders & Parkerson, Hot Springs, Ark., for appellant.

Floyd Clardy, III, Asst. U. S. Atty., Fort Smith, Ark. (argued) and Larry R. McCord, U. S. Atty., Fort Smith, Ark., on brief, for appellee.

Before HEANEY and ROSS, Circuit Judges, and LARSON,* Senior District Judge.

ROSS, Circuit Judge.

Following a jury trial in the United States District Court for the Western District of Arkansas, defendant Don Lyndall Robbins was convicted of impersonating an FBI agent in violation of 18 U.S.C. § 912.[1] The defendant appeals, alleging first that the indictment and evidence failed to establish facts sufficient to constitute an offense against the United States under the statute and, second, that testimony concerning other crimes, wrongs or acts was admitted into evidence contrary to Federal Rules of Evidence 404(b) and 403.

The evidence at trial established that during late 1977 and early 1978 the defendant represented to several persons that he was an FBI agent, or a "NARC." In order to affirm his identity as a federal officer he exhibited to some of these people, at various times, a pistol, a set of handcuffs, and an identification card with a badge.

The evidence specifically established that Robbins told his girlfriend, Cheryl Jacobs, that he was an undercover narcotics agent for the Department of Justice. He continued this impersonation, making phone calls in front of Ms. Jacobs while pretending to use a government credit card number and carrying handcuffs and a pistol everywhere he went. On one occasion, the defendant stated to Ms. Jacobs that he had been shot at, and requested that she send some of the expended cartridges to the FBI office in Little Rock. Ms. Jacobs testified that the defendant came over the following night

---

* The Honorable EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1.  18 U.S.C. § 912 provides that:
    Whoever falsely assumes or pretends to be an officer or employee acting under authority of the United States or any department, agency or office thereof, and acts as such, or, in such pretended character demands or obtains any money, paper, document or thing of value, shall be fined not more than $1,000 nor imprisoned more than three years, or both.

with his shirt torn and with blood all over himself, explaining that he had beaten up his assailant, who was supposedly being held in the county sheriff's office.

On other occasions, the defendant purchased an automobile from John Harmon, and chartered an airplane from William R. Patterson, stating to each that he was a narcotics agent. Patterson testified that he saw handcuffs on the defendant at one time. Later, the defendant opened a checking account at a bank in Hot Springs, representing that he was employed by the Department of Justice.

In January of 1978, the defendant entered Denim & Duds, a Hot Springs business establishment, and in response to a question from the owner, Bill Baswell, he represented that he was an FBI agent and showed Baswell a badge and identification card. A day or two later, the defendant entered Denim & Duds and Baswell saw that he was wearing a shoulder holster containing a revolver and also saw a pair of handcuffs. The defendant did not arrest anyone, look for business records, ask any official questions, or handcuff anyone. Baswell stated that all of the transactions he had with the defendant were personal. Nevertheless, he became suspicious and called the FBI to check on the defendant's identity, and Robbins was arrested.

Prior to the trial, counsel for defense moved to dismiss the indictment for failing to state facts sufficient to allege an offense under 18 U.S.C. § 912. The motion was denied, but the argument was raised again in the defendant's motion for a directed verdict, which claimed that the prosecution had failed to prove an offense under the statute. Following the denial of this motion, Robbins' attorney declined to offer any evidence on behalf of his client.

2. The indictment for Count II reads as follows:
    That on or about the 17th day of January, 1978, in the Western District of Arkansas, Hot Springs Division, DON LYNDALL ROBBINS did falsely pretend to be an employee of the United States, acting under the authority thereof, that is, an employee of the Federal Bureau of Investigation of the United States Government, and did falsely take upon himself to act as such, in that he falsely

## I. Sufficiency of the Indictment and Proof

Appellant first argues that the motions for dismissal and directed verdict should have been granted because the indictment and evidence failed to allege or establish any acts which would constitute a crime against the United States under 18 U.S.C. § 912. We disagree.

■ 18 U.S.C. § 912 sets out two distinct crimes: the first, where one "pretends to be an officer or employee acting under authority of the United States * * * and acts as such," and the second, where one "in such pretended character demands or obtains any money, paper, document, or thing of value * * *." We are dealing here with the first offense (hereinafter referred to as section 912(1)) which has as its two elements the impersonation of an officer and acting as such. An indictment under section 912(1) must allege, therefore, facts sufficient to constitute an "act" within the meaning of the statute. *United States v. Harmon*, 496 F.2d 20 (2d Cir. 1974); *United States v. Hamilton*, 276 F.2d 96, 98 (7th Cir. 1960); *Ekberg v. United States*, 167 F.2d 380, 387 (1st Cir. 1948). The appellant claims that the "acts as such" element has neither been alleged sufficiently in the indictment,[2] nor proved.

One of the appellant's assignments of error is that the indictment failed to allege an "intent to defraud." This approach is followed by the Fifth Circuit, and is based on that court's interpretation of a change in the language of the statute, which came about with the revision of the penal code in 1948. The offense of impersonating a federal officer prior to 1948 was contained in 18 U.S.C. § 76 (1946):

stated to Bill Baswell that he was an employee of the United States Government, Department of Justice, Federal Bureau of Investigation, and did display a badge and a picture in an ID folder, a set of handcuffs, and a pistol, all in violation of Section 912, Title 18, United States Code.
(Count I of the indictment was dismissed on the prosecution's motion.)

Whoever, *with intent to defraud* either the United States or any person, shall falsely assume or pretend to be an officer or employee acting under the authority of the United States, or any department, or any officer of the Government thereof, or under the authority of any corporation owned or controlled by the United States, and shall take upon himself to act as such * * *[3]

In *United States v. Randolph*, 460 F.2d 367 (5th Cir. 1972), the court found it unlikely that Congress would "expand the scope of the statute so as to make more [sic] foolish bravado without any intent to deceive a federal felony." *Id.* at 370. Thus, the Fifth Circuit requires that "intent to defraud" still be alleged in the indictment, despite the fact that the language was dropped from the statute.

We question the wisdom of requiring that an indictment allege an "intent to deceive" when the reviser's note to the statutory change indicated that the words were rendered "meaningless" by a decision of the United States Supreme Court. Other courts which have considered the question follow the "accepted canon of statutory construction that where Congress has advertently changed the legislative language the change must be given effect." *United States v. Guthrie*, 387 F.2d 569, 571 (4th Cir. 1967). *See United States v. Rose*, 500 F.2d 12, 16–17 (2d Cir. 1974). *See also United States v. Mitman*, 459 F.2d 451, 453 (9th Cir.), *cert. denied*, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 111 (1972).

While the weight of authority goes against the rationale of the Fifth Circuit in *Randolph, supra*, it remains unclear what properly should be contained in an allegation of a criminal offense under the second element of section 912(1). *United States v. Rosser*, 174 U.S.App.D.C. 79, 528 F.2d 652

(D.C.Cir.1976) represents a sound attempt to reconcile these two interpretations of the 1948 revision. Under the *Rosser* approach, the Fifth Circuit's concern that an expansion of the statute might elevate "mere foolish bravado" to criminal status could be relieved by using the language of *United States v. Lepowitch*, 318 U.S. 702, 63 S.Ct. 914, 87 L.Ed. 1091 (1943) for the second element of the offense.[4] Thus, to "act as such" would be the equivalent of causing "the deceived person to follow some course he would not have pursued but for the deceitful conduct." The Fourth, Ninth and Second Circuits would be accommodated by virtue of the elimination of the "intent to defraud" requirement. *Rosser, supra*, 174 U.S.App.D.C. at 83, 528 F.2d at 656.

The *Rosser* approach helps to explain the reviser's comment to the 1948 revision of the penal code, wherein it was stated that *Lepowitch* had rendered the "intent to defraud" requirement "meaningless." More important, however, is the fact that the language in *Lepowitch* puts some substance into the "acts as such" element, requiring reliance on the impersonator's assertion of authority, without resorting to the language that Congress left out of the revised penal code.

The appellant asserts that our adoption of the *Rosser* approach would require us to reverse the district court's denial of the motion to dismiss and the motion for directed verdict. It is argued that Robbins impersonated an FBI agent but did not "act as such" by asserting the authority of an FBI agent. Thus, the indictment did not allege any assertion of an agent's authority and the prosecution failed to prove the same. We disagree with both conclusions.

In *United States v. Hamilton*, 276 F.2d 96 (7th Cir. 1960), the defendant was convicted

---

**3.** *United States v. Lepowitch*, 318 U.S. 702, 63 S.Ct. 914, 87 L.Ed. 1091 (1943), held that "the words 'intent to defraud,' * * * do not require more than that the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." *Id.* at 704, 63 S.Ct. at 916. Following this decision, Congress revised the penal code

and dropped the words "intent to defraud," explaining only, in a reviser's note, that the words were rendered "meaningless" by the *Lapowich* [sic] decision. *See United States v. Rosser*, 174 U.S.App.D.C. 79, 81, 528 F.2d 652, 654 (D.C.Cir.1976).

**4.** See note 3, *supra*.

under section 912(1) for impersonating an FBI agent. He rented a room in a boarding house, claiming he was an FBI agent, and on subsequent occasions, he wore a gun around the house. The court upheld his conviction, and quoted the comments of the district judge:

> I don't think that any citizen of the type that Mrs. Martin was, and her husband, would ever have tolerated a citizen under the circumstances * * * that day in her home, this afternoon or the subsequent day, to be going through her house with a gun on his person and visible to other people. * * * I don't think that is exactly a case of idle boasting, * * * claiming he is an Agent of the Federal Bureau of Investigation. Here's a man that is carrying a gun, and he is a mature man.

276 F.2d at 98. In the present case, we have a more obvious scheme of impersonation of a federal officer and assertion of that officer's authority. The carrying of a pistol, handcuffs, identification card and a badge go beyond "mere bravado." These actions are integral parts of the official routine of an FBI agent. Moreover, we are convinced that the evidence showed that the people who tolerated such acts and accorded some deference to Robbins, did so in reliance on the authority that an FBI agent possesses in order to carry out the duties of his profession.

■ While we are persuaded that the *Rosser* approach most accurately states the elements of a section 912(1) offense, we

conclude that even under these standards the prosecution, by showing that Robbins carried a gun and handcuffs and did so in cashing a check and carrying on his business, alleged and proved acts sufficient to comply with the "acts as such" requirement of the statute.[5]

## II. Evidence of Other Similar Acts

The appellant also argues that the jury was prejudiced by the testimony of Cheryl Jacobs, John Harmon and William R. Patterson, because each of these witnesses referred to other crimes, wrongs or acts which were not alleged in the indictment. Normally, such evidence is inadmissible. Rules 404(b) and 403 Federal Rules of Evidence prohibit the introduction of such evidence unless it falls within one of the well-recognized exceptions to the rule, and unless its probative value outweighs its prejudicial effect.[6] Nevertheless, we find the appellant's argument unpersuasive. Because of the issues involved in this appeal, however, we feel that a somewhat detailed discussion of the district court's evidentiary ruling is merited.

■ At the outset, it should be pointed out that we remain unconvinced—as Judge Harris was unconvinced—that all of the testimony in question refers to other crimes, wrongs or acts which were not alleged in the indictment. Appellant urges us to interpret the indictment as charging Don Robbins only with the events at Denim & Duds.[7] As we pointed out in our discus-

---

5. In this respect we differ with the dicta set forth in *United States v. Rosser, supra*, 174 U.S.App.D.C. at 84, n.20, 528 F.2d at 657, n.20, and agree with the rationale of *United States v. Hamilton, supra*, 276 F.2d at 278.

6. Rule 404(b) reads as follows:

> (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 403 reads as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

7. The trial record shows that Judge Harris initially responded to appellant's objection by stating that the indictment is "not limited to what happened at Denim and Duds. It's a charge as to the impersonating of an F.B.I. agent, and the fact that he did it in accordance with what is alleged in the indictment by mak-

sion of 18 U.S.C. § 912(1), the offense of impersonating a federal official or officer is composed of two elements: an impersonation and an overt act. Both of these elements are alleged in the indictment in specific terms. We are of the opinion that the language of the indictment concerning Denim & Duds refers exclusively to the "overt act" element of the offense. Thus, testimony showing a pattern of impersonation, which is the first element of the crime, is not limited by the events which transpired at Denim & Duds.

An examination of the evidence demonstrates that some of the disputed testimony was offered to show only that Robbins identified himself as an agent of the FBI. No overt acts were mentioned, for example, in John Harmon's testimony about the defendant's purchase of an automobile. Cheryl Jacobs testified that the defendant carried on a pattern of impersonation throughout the period in which they were dating and in which they eventually became engaged. She stated that during this time Robbins always carried a gun, and was doing so whenever they visited Denim & Duds together. Most of her testimony either verified the testimony of Bill Baswell or concerned her personal relationship with Robbins. The only objection to her testimony came in response to her account of the evening on which Robbins came to her apartment, bloody and ragged, claiming he had just beaten a person who had fired a gun at him the night before. He was carrying a bloodied roll of pennies which he said was in his fist during the altercation. This testimony seems primarily directed toward establishing a pattern of impersonation by way of Don Robbins' boasting, rather than referring to overt acts in carrying out the impersonation.

William Patterson testified that the defendant identified himself as a NARC, and on one occasion showed him a set of handcuffs. Robbins never actually identified himself as a *federally employed* NARC, however, which is essential to the charge of impersonating a federal officer. To this

extent, it would seem that the events referred to in Mr. Patterson's testimony are outside of the scope of the indictment, and could be considered other "crimes, wrongs or acts."

Despite the fact that portions of the disputed evidence are not related to the specific charges in the indictment, the testimony is nevertheless admissible under the exceptions stated in Rule 404(b), Federal Rules of Evidence. Furthermore, in view of the nature and scope of the testimony, and the cautionary instructions of the trial judge, we would be hard pressed to hold, under Rule 403, Federal Rules of Evidence, that the prejudicial effect of the evidence outweighed its probative value.

The rules for the admission of other crimes evidence are well established, and the court recently set out the requirements which must be met:

(1) a material issue on which other crimes evidence may be admissible has been raised, e. g., *United States v. Drury*, 582 F.2d 1181, 1184 (8th Cir. 1978); *United States v. Maestas*, 554 F.2d 834, 837 (8th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977); (2) the proffered evidence is relevant to that issue, *ibid.*; (3) the evidence of the other crimes is clear and convincing, e. g., *United States v. Cobb*, 588 F.2d 607, 612 (8th Cir. 1978), *cert. denied*, 470 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979); *United States v. Drury, supra*, 582 F.2d at 1184; *United States v. Davis*, 551 F.2d 233, 234 (8th Cir.), *cert. denied*, 431 U.S. 923, 97 S.Ct. 2197, 53 L.Ed.2d 237 (1977). In addition, to be admissible on such issues as intent, knowledge or plan, the other crimes evidence must relate to wrongdoing "similar in kind and reasonably close in time to the charge at trial." *United States v. Drury, supra*, 582 F.2d at 1184. See, e. g., *United States v. Little*, 562 F.2d 578, 581 (8th Cir. 1977); *United States v. Jardan*, 552 F.2d 216, 219 (8th Cir.), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977). Finally,

ing a statement to Bill Baswell * * * [and] the fact that he made the same statement or

the same kind of statement to other people would only go to the charge in the indictment."

**694**

evidence otherwise admissible under Rule 404(b) may be excluded under Fed.R. Evid. 403, "if its probative value is substantially outweighed by the danger of unfair prejudice * * *." *United States v. Frederickson,* 601 F.2d 1358, 1365 (8th Cir. 1979). These requirements were also set out in *United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974). They were valid before the 1975 adoption of the Federal Rules of Evidence, and they are valid now. *United States v. Frederickson, supra,* n.9.

■ In the present case, most of the testimony is relevant to the material issues involved in proving the first element of an offense under 18 U.S.C. § 912(1). Furthermore, the testimony is clear and convincing, insofar as it establishes a pattern or plan of impersonation of a federal officer or official. Finally, by virtue of the fact that the evidence shows a scheme of impersonation identical to that mentioned in the indictment and took place within a two-month period, it is obvious that the testimony was similar in kind and reasonably close in time to the charge at trial.

Counsel for the appellant argues that the introduction of the testimony into evidence is prohibited under the rule set forth in *United States v. Fierson,* 419 F.2d 1020 (7th Cir. 1969). In that case, testimony concerning prior criminal acts was admitted to show intent or willfulness, and the defendant's conviction for impersonating an FBI agent under 18 U.S.C. § 912(1) was reversed. The court found that neither party had raised an issue of intent or willfulness, and although intent was a formal issue in finding the defendant guilty of the offense, no one disputed the issue of intent. The court stated that in order to "justify admission into evidence of an accused's prior criminal acts *to establish willfulness and intent,* it is necessary that willfulness and

intent be more than merely formal issues * * *. [And] a plea of not guilty cannot, by itself, be construed as raising such a keen dispute on the issue of willfulness and intent so as to justify admission of this type of evidence." *Id.* at 1023 (emphasis supplied).

While we do not necessarily agree with this rationale, we are faced with a much different situation here. Although intent was never a disputed issue at the trial,[8] the evidence admitted over the defendant's objection was not offered solely to prove intent or willfulness. Instead, the testimony describes a plan, pattern or common scheme of impersonations so interrelated with the charge in the indictment that it shows "the course of conduct leading to the events which form the basis of the crime charged," and is admissible on these grounds. *United States v. Adcock,* 558 F.2d 397, 401 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

As this court recently stated:

While it is generally improper to admit evidence of a defendant's criminal acts not charged in the indictment, "evidence of other crimes may be presented when 'they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged'" *United States v. Miller,* 508 F.2d 444, 448–49 (7th Cir. 1974).

*United States v. Derring,* 592 F.2d 1003, 1006–07 (8th Cir. 1979). Rule 404(b) also covers evidence offered to show the *res gestae,*[9] and the evidence which describes "integral parts of the * * * crime."[10]

■ Our final task is to consider the probative value of the evidence as opposed to its possible prejudicial effect. As this court stated in *United States v. Maestas,* 554 F.2d 834 (8th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977):

---

**8.** The defense presented no evidence whatsoever. Counsel for the defense did not dispute intent, but rather challenged only the sufficiency of the indictment and the admission of the testimony into evidence.

**9.** *See Carter v. United States,* 549 F.2d 77, 78 (8th Cir. 1977); *United States v. Howard,* 504 F.2d 1281, 1284 (8th Cir. 1974).

**10.** *United States v. Calvert,* 523 F.2d 895, 907 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

Fed.R.Evid. 403 authorizes the district court to exclude such evidence, even though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Our task is to assess the relevancy and the probative value of the challenged evidence; if it meets the requirements of Rule 404(b) we may not reverse the ruling of the District Court unless we also find that the prejudice from admitting the evidence substantially outweighed its probative value. In making that evaluation, we must give great deference to the district judge, who saw and heard the evidence. *United States v. Nichols*, 534 F.2d 202 (9th Cir. 1976); *United States v. Gocke*, 507 F.2d 820, 824 (8th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); *United States v. Skillman*, 442 F.2d 542, 551–52 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

*Id.* at 836. During the trial, Judge Harris explained to the jury that the testimony of Patterson and Harmon was admitted only to show motive, intent, plans, knowledge and identity, but was not admitted to show that the defendant acted in conformity with the character traits referred to by the witnesses. Furthermore, the same admonition was repeated in the judge's instructions to the jury.[11] In light of these instructions, and because very little of the testimony referred to other crimes, wrongs or acts not charged in the indictment, we find that the probative value of the evidence outweighs its prejudicial effect.

Accordingly, we affirm the decision of the district court.

HEANEY, Circuit Judge, dissenting.

I dissent. The government has neither alleged nor proved that the defendant "acted" as a federal officer within the meaning of 18 U.S.C. § 912. The majority concedes that the first offense in that section "has as its two elements the impersonation of an officer *and* acting as such." (Emphasis included.) The Court finds that the second element is satisfied because "[t]he carrying of a pistol, handcuffs, identification card and a badge go beyond 'mere bravado.' These actions are integral parts of the official routine of an FBI agent."

I do not agree that donning the costume of a federal officer constitutes an "act" sufficient to satisfy the second element of the offense. Dressing as an FBI agent is a part of the false pretense, not a separate overt act as a federal officer. As the Court of Appeals for the District of Columbia said in *United States v. Rosser*, 528 F.2d 652, 657, 174 U.S.App.D.C. 79, 84 (D.C.Cir.1976), "If [the 'act'] requirement could be satisfied by any overt act consistent with the impersonation, the two elements defined by the statute could always be found in the same action." (Footnote omitted.)

In my view, Congress intended § 912 to proscribe more serious conduct than that involved in this case. The "acts as such" element of § 912 should be found to be satisfied only if there has been an attempt to "exercise pretended authority," the real mischief Congress intended to prohibit. *See United States v. Rosser, supra* 528 F.2d at 656, 174 U.S.App.D.C. at 83. To the extent that this conclusion is inconsistent with the view of the Seventh Circuit expressed in *United States v. Hamilton*, 276 F.2d 96 (7th Cir. 1960), I believe, as did the *Rosser* Court, that the *Hamilton* decision is incorrect. *See United States v. Rosser, supra* 528 F.2d at 657 n.20, 174 U.S.App.D.C. at 84 n.20.

The majority suggests that overt acts by the defendant may be inferred from the reactions of those around the defendant. "[W]e are convinced," the court states, "that the evidence showed that the people who tolerated [the carrying of a pistol, handcuffs, identification card and a badge]

---

11. The Advisory Committee Note to Fed.R. Evid. 403 provides that "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." *See United States v. Maestas*, 554 F.2d 834 (8th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977).

and accorded some deference to Robbins, did so in reliance on the authority that an FBI agent possesses in order to carry out the duties of his profession." The Court does not, however, identify the evidence it finds so persuasive, nor did my reading of the record uncover any evidence showing that others relied on an exercise of pretended authority.

In addition, a review of the record reveals a second ground requiring reversal of the defendant's conviction. In his final argument, one of the prosecutors, James Gutensohn, made a number of remarks that could only have been intended to appeal to the prejudices of the jury. For example, Gutensohn stated:

> [L]adies and gentlemen of the jury, the hour is growing late. You've been here for several hours today, all brought on by the action and conduct of this man here. * * * Now, if he had devoted as much time to getting a job, rather than acting [as] an F.B.I. agent and going around falsifying himself * * * you wouldn't be here today. This expense in trying this case would not be heaped upon you and other people.

This attempt to place the blame for the trial on the defendant was highly improper. This Court has consistently held that "the arguments of counsel must be confined to the issues of the case, the applicable law, pertinent evidence, and such legitimate inferences as may properly be drawn." *United States v. Quinn,* 467 F.2d 624, 627 (8th Cir. 1972), *cert. denied,* 410 U.S. 935, 93 S.Ct. 1390, 35 L.Ed.2d 599 (1973) (quoting *Wakaksan v. United States,* 367 F.2d 639, 646 (8th Cir. 1966), *cert. denied,* 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967)). The expense of the trial and the jury's inconvenience were obviously not issues in this case, and emphasizing them in argument served no legitimate purpose.

Similarly improper were Gutensohn's repeated suggestions that the jury members were the victims of the defendant's actions:

> [The FBI was created for] your protection. For the protection of your bank. For the protection of your businessmen,

and for the protection of you people. * * [The defendant accumulated] a gun [and] other implements that an officer is permitted to wear * * * for one purpose. And that was to create the image—hold himself out, represent himself to you people that he was an F.B.I. agent.

Again, these statements were irrelevant to the issues at trial. No legitimate purpose was served by such an appeal to the fears and biases of the jury.

Defense counsel made no objection to the prosecutor's argument. Although failure to raise an issue at trial ordinarily precludes appellate review of that issue, a Court of Appeals may consider such issues in order to avoid a miscarriage of justice. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Andrews v. Olin Mathieson Chemical Corporation,* 334 F.2d 422, 428 (8th Cir. 1964). The statements by the prosecutor in this case were so deliberately inflammatory and prejudicial that the defendant was denied a fair trial. Accordingly, I would reverse.