FILED
United States Court of Appeals
Tenth Circuit

December 2, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TERRY EARL NEIDLINGER,

Defendant-Appellant.

No. 09-8017
(D. Ct. No. 2:08-CR-00241-CAB-1)
(D. Wyo)

---

ORDER AND JUDGMENT[*]

---

Before **TACHA** and **GORSUCH,** Circuit Judges, and **STAMP**, Senior District Judge.[**]

---

Defendant-appellant Terry Earl Neidlinger appeals the district court's judgment

and sentence. The defendant misrepresented to staff of the mayor of Cheyenne,

Wyoming that he was a United States Marshal, then demanded that he see the mayor

immediately. The government charged the defendant with False Impersonation of an

Officer or Employee of the United States, pursuant to 18 U.S.C. § 912. A jury found the

defendant guilty of impersonating a United States Marshal. The district court sentenced

the defendant to fifteen days imprisonment and time served, for a total of 172 days

---

[*] This order and judgment is not binding precedent except under the doctrines of law
of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the
Northern District of West Virginia sitting by designation.

imprisonment, plus one year of supervised release.  We have jurisdiction under 28 U.S.C. § 1291.  For the reasons set forth below, we AFFIRM the judgment and sentencing of the district court.

## I.  BACKGROUND

On August 25, 2008, Terry Neidlinger walked into the Cheyenne, Wyoming mayor's office determined to meet with the mayor over alleged harassment by the police. Neidlinger was upset over an ongoing dispute with the city regarding city police officers and his alleged sexual abuse of his stepdaughter.  This visit was not Neidlinger's first visit to the mayor's office.  On August 19, 2008, Neidlinger demanded a meeting with the mayor.  The mayor met with Neidlinger for 30 to 45 minutes.  The mayor's staff informed the defendant that in the future, he needed an appointment to see the mayor.  A scheduled follow up meeting occurred on August 21, 2008 with the mayor and the chief of police. On August 25, the mayor's secretary, Virginia Riley, immediately recognized Neidlinger. She described his demeanor as "very agitated."  He wore a white shirt, blue pants, and a belt.  On this third visit to the mayor's office, Neidlinger became angry when Riley refused to show Neidlinger into the mayor's office.  Neidlinger showed Riley a badge, claimed he was now a United States Marshal, and demanded that he see the mayor immediately.  Riley stated that Neidlinger pointed to his badge and told her that he "was tired of people pushing him around and that he had a badge now."  Riley believed him for a moment and thought that the United States Marshals must be desperate for help to have

-2-

hired Neidlinger. Neidlinger yelled and slammed his hands on a newspaper he placed on Riley's desk. Riley, growing frustrated, told him to be quiet so she could speak.

At this point, Judi Gore, the mayor's administrative assistant appeared because of the commotion. She arrived to find Neidlinger angrily complaining about police officers who he alleged were treating him unfairly. Gore observed Neidlinger pat his badge and state, "I'm wearing a badge now." Gore believed that because of Neidlinger's behavior, she and Riley needed additional help. She called a retired policeman and the fire department.

Neidlinger left the mayor's office without seeing the mayor. Gore then called the police department to report that Neidlinger had purported to be a United States Marshal. She told the police that the Marshals "should know that they have someone working for them who flies off the handle . . . and they need to know what caliber of officer that they've got."

Deputy United States Marshal Dennis Conmay conducted an investigation of the incident. He obtained a search warrant for Neidlinger's vehicle and home, as well as an arrest warrant. In Neidlinger's van, Deputy Marshal Conmay found a "plastic, old-western type badge" with "Marshal" and "Tombstone" inscribed in it. The badge recovered from the vehicle is not the badge that Riley and Gore claim to have seen. Riley described the badge as big, pewter, and oval. Gore observed that the badge was "round, pewter" – "a star with round knobs on the end of the star." Gore stated the badge said "Marshal" on the bottom and the top may have said "U.S." or "United States."

At trial, the defendant testified and admitted that he may have told Deputy Marshal Conmay that he represented himself to the mayor's staff as a United States Marshal and admitted that he wore a badge to the mayor's office on August 25, 2008. The parties stipulate that Neidlinger has never been an employee of the United States Marshals Service and that the United States Marshals Service is an agency or department covered under 18 U.S.C. § 912.

A grand jury returned an indictment against Neidlinger. Following a trial, a jury found Neidlinger guilty. The district court sentenced Neidlinger. Neidlinger then filed a Notice of Appeal.

## II. DISCUSSION

Neidlinger, on appeal, contends that he cannot be convicted under 18 U.S.C. § 912 because while he did claim to be a United States Marshal, he did not *act* as a United States Marshal when he demanded an audience with the mayor. He believes that the statute was written to prevent people from performing acts traditionally performed by Marshals on the job and that the statute does not cover the present incident. Second, Neidlinger challenges the district court's failure to instruct the jury on the meaning of the statutory phrase, "acts as such." As a result of the lack of the instruction, Neidlinger claims his conviction is based on conflicting definitions of an essential element of the charge.

A.     The Evidence of the Defendant's Overt Acts While in the Assumed Role of a

United States Marshal Was Sufficient to Sustain His Conviction

This Court reviews a challenge to the legal issue of sufficiency of evidence *de novo*. *United States v. Lauder*, 409 F.3d 1254, 1258 (10th Cir. 2005). This Court also reviews the "evidence in the light most favorable to the government to determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 1259 (citing *United States v. Reece*, 86 F.3d 994, 995–96 (10th Cir. 1996)). Additionally, "while the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (internal citations omitted).

Title 18, United States Code, Section 912 states:

Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 912 (2009). For a defendant to be convicted under this statute, two elements must be present: false representation of being an officer and some overt act. *Dickson v. United States*, 182 F.2d 131, 132 (10th Cir. 1950). Congress enacted this statute with the purpose of maintaining "the general good repute and dignity of the (government) service

-5-

itself." *United States v. Lepowitch*, 318 U.S. 702, 704 (1943) (citing *United States v. Barnow*, 239 U.S. 74, 80 (1915)).

In this case, the parties do not dispute the fact that Neidlinger falsely represented himself to Virginia Riley as a United States Marshal. The parties do dispute, however, whether there has been an overt act. We must decide whether: 1) showing a badge; 2) stating the possession of a badge; 3) exclaiming that because of the badge, the defendant will not be pushed around any more; and 4) demanding to see the mayor without an appointment results in an overt act above the mere false representation of claiming to be a United States Marshal.

This circuit has not defined the statutory phrase, "acts as such." This circuit does, however recognize that there is no uniform accepted definition of the phrase, "acts as such," and that there is disagreement in the circuits over the difference between an overt act and an original act of impersonation. *United States v. Wright*, 300 Fed. App'x 608, 611 n.3 (10th Cir. 2008) (unpublished). Several courts have decided that there is no distinction between an overt act and an original act of impersonation for purposes of 18 U.S.C. § 912 and that the term "acts as such" is mere surplusage. *See United States v. Gayle*, 967 F.2d 483, 488 (11th Cir. 1992) ("an indictment [under 18 U.S.C. § 912] need not allege additional acts beyond the general act of impersonation"); *United States v. Cohen*, 631 F.2d 1223, 1224 (5th Cir. 1980) (stating that a person signing in at a penitentiary as associate attorney general and then representing to an inmate that he is the associate attorney general is sufficient to describe "acts as such"); *United States v.*

-6-

*Hamilton*, 276 F.2d 96, 97 (7th Cir. 1960) ("wearing firearms in the . . . home was an act in keeping with his pretended character"). This Court has, however, stated that the statute involves "two separate and distinct offenses." *United States v. Milton*, 421 F.2d 586, 587 (10th Cir. 1970).

The circuit courts requiring a second, distinct act beyond the initial act of impersonation have provided many indicators for what differentiates an overt act from an initial act of impersonation. The act must exceed mere bragging, bravado or puffery. *See Barnow*, 239 U.S. at 77 ("'to act as such' means no more than to assume to act in the pretended character. It requires something beyond the false pretense with intent to defraud; there must be some act in keeping with the pretense; but it would strain the meaning of the section to hold that the offender must act as a veritable officer of the government would act."); *United States v. Robbins*, 613 F.2d 688, 692 (8th Cir. 1979) ("The carrying of a pistol, handcuffs, identification card and a badge go beyond 'mere bravado.'"); *United States v. Rosser*, 528 F.2d 652, 657–58 (D.C. Cir. 1976) ("focusing attention on the nature of the defendant's action should differentiate the mere braggart from the criminal..."). An overt act must be more than idle boasting. *Hamilton*, 276 F.2d at 98. An overt act may involve integral parts of an official routine. *See Robbins*, 613 F.2d at 692 ("[Carrying a pistol, handcuffs, an identification card and a badge] are integral parts of the official routine of an FBI agent."). Notably, an overt act would cause the deceived person "to follow some course he would not have pursued but for the

deceitful conduct." *Lepowitch*, 318 U.S. at 704; *United States v. Gilbert*, 143 F.3d 397, 398 (8th Cir. 1998).

The government claims that the overt act in this case is the flashing of the badge, demanding to see the mayor, shouting that he will not be pushed around anymore, and stating that he had a badge now. The defendant, on the other hand, argues that he was on a personal quest seeking personal vindication and therefore cannot be convicted under the statute. The defendant misses the rationale behind the statute and reads into it more than Congress intended. As mentioned earlier, the purpose of the statute is to maintain "the general good repute and dignity of the (government) service itself." *Lepowitch*, 318 U.S. at 704 (citing *Barnow*, 239 U.S. at 80). Nowhere does the statute, or case law, require that the defendant impersonate an official in his official capacity for a non-personal purpose. Supreme Court case law is clear that this is not the case. *Barnow*, 239 U.S. at 77. A real United States Marshal in the same situation would not flash a badge, point to it, and tell the mayor's secretary that he has a badge so he will not be pushed around. This was an overt act beyond the original impersonation because Neidlinger tried to use the authority of the United States Marshals Service to see the mayor.

Further, Neidlinger attempted to cause Virginia Riley "to follow some course [she] would not have pursued but for the deceitful conduct." *Lepowitch*, 318 U.S. at 704; *Gilbert*, 143 F.3d at 398. Neidlinger used the badge, title and authority of the office to gain admittance to the mayor's office. Neidlinger's actions went beyond mere bragging, puffing, or idle boasting. He did not tell Riley in casual conversation that he was a now a

United States Marshal. Neidlinger told her that because he was now a United States Marshal, he would not be pushed around anymore and that he wanted to see the mayor immediately.

Additionally, this Court believes that carrying a badge of the agency is an integral part of the official routine of a United States Marshall and provided Neidlinger with the apparent authority of the United States Marshals. Neidlinger's behavior went beyond mere representation. Deputy Marshal Conmay testified at trial that people "pay great attention to" the fact he is a United States Marshal. He further testified that "no request [he] make[s] is put aside" after he identifies himself as a marshal.

The defendant believes that he must have performed an official, authorized task of a United States Marshal to be convicted of the statute. The defendant argues that this Court should look to *United States v. York*, 202 F. Supp. 275, 276, (E.D. Va. 1962). In *York*, a young woman bought a dress on credit from a department store. *Id.* On her credit application, she stated that she was an employee of the Federal Bureau of Investigation (FBI). *Id.* She lied about her employment status. *Id.* Her only connection to the FBI was a job interview. *Id.* While parallels can be drawn between *York* and the present case, the defendant's reliance on *York* is misplaced. First, there is no overt act in *York*. The woman buying the dress falsely misrepresents that she is an FBI employee. She does not present a badge, a fake identification card, or a gun. She makes no showing of apparent authority. The woman in *York* simply wrote down that she worked at the FBI. In contrast, Neidlinger not only stated that he was a United States Marshal, but also pointed

to his badge, stated he had a badge now, exclaimed he would no longer be pushed around and demanded to see the mayor.  There is a distinction in that  Neidlinger went beyond mere bragging about his false employment.  Showing a badge is an overt act.  *Robbins*, 613 F.2d at 692 ("The carrying of a pistol, handcuffs, identification card and a badge go beyond 'mere bravado.'").  Neidlinger attempted to use his "status" as a United States Marshal to see the mayor, asserting that his position gave him the authority to see the mayor immediately.  In contrast, York merely represented that she was an employee of the FBI and in no way claimed that her authority to buy the dress derived from the FBI.

The defendant further cites *York* to assert that to violate the statute, a defendant must be acting in an official capacity of the office he is impersonating.  As mentioned earlier, this argument is without merit and contravened by Supreme Court precedent.  *See Barnow*, 239 U.S. at 77 ("it would strain the meaning of the section to hold that the offender must act as a veritable officer of the government would act.").

Finally, the defendant looks to *York* to argue that when the impersonation is for one's personal benefit, there is no violation of the law.  This, too, is not an accurate statement of the law.  *See United States v. Parker*, 699 F.2d 177, 177 (4th Cir. 1983) (per curiam) (affirming conviction of a defendant impersonating an Internal Revenue Service agent while buying firewood at the full price); *Robbins*, 613 F.2d at 692 ("the prosecution, by showing that [the defendant] carried a gun and handcuffs and did so in cashing a check and carrying on his business, alleged and proved acts sufficient to comply with the 'acts as such' requirement of the statute.").

For the above stated reasons, we find that even under the strictest construction of 18 U.S.C. § 912, a reasonable jury could conclude beyond a reasonable doubt that Neidlinger falsely represented himself as a United States Marshal and "acted as such" by pointing to his badge and demanding immediate access to the mayor. Accordingly, the evidence was sufficient to sustain Neidlinger's conviction.

B.      The District Court's Jury Instructions Were Not Erroneous

This Court reviews *"de novo* jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008) (internal quotations omitted). Whether a district court's decision "to give or to refuse a particular jury instruction" is reviewed for abuse of discretion. *Id*. This Court will reverse only if it has "substantial doubt that the jury was fairly guided." *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994).

The defendant claims that the district court committed error in not giving a jury instruction defining the phrase, "act as such," and instead allowing counsel to argue the meaning during closing arguments. During the instruction conference, on ruling on this issue, the district court stated:

> What I think, [defense counsel], is that they have left this intentionally undefined so that counsel can argue it and shape it to his ends. And I believe that that's what you two are going to do, really, and so I believe I will leave it just like it is. I think that an act in the assumed role is meant to give you some latitude.

-11-

The court instructed the jury as follows:

> The Defendant is charged in the Indictment with a violation of 18 U.S.C. § 912.
>
> The law makes it a crime to pretend to be an officer or employee acting under the authority of the United States or any department, agency, or officer thereof.
>
> To find the Defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: the Defendant falsely assumed and pretended to be an officer or employee acting under the authority of the United States;
>
> Second: the Defendant knew that such assumption or pretension was false;
>
> Third: the Defendant committed any act in the assumed role.

The defendant first contends that because the jury heard the prosecution's interpretation of "act as such," the jury was not adequately instructed on the charge. The defense argues that the defendant must act as a marshal would on official business to be found guilty under the statute. The defendant states that the government's definition of "acts as such" is not supported by this circuit's case law. In support of this contention, the defendant lists several cases. The defendant's reliance on these cases is again misplaced. In *Milton*, 421 F.2d at 587, the trial court misconceived the charge made in the indictment when it stated the only question was whether the defendant represented himself as a federal employee. That did not occur here, where the jury was charged with finding that the defendant misrepresented himself and that he committed any act in that

-12-

role.  Next, the defendant relies upon *Dickson,* 182 F.2d at 134.  The *Dickson* Court reversed the trial court for failing to permit cross-examination, not for sufficiency of evidence.  *Id.*

The defendant also compares his case to *United States v. Harth*, 280 F. Supp. 425, 427 (W.D. Okla. 1968), which states that "an indictment is defective if it states that the Defendant engaged in being something which is the pretense charged, but the indictment is good if it states that the Defendant engaged in doing something which is not the pretense itself in the pretended capacity."  The fundamental disagreement between the parties is whether Neidlinger's representations of showing the badge and making the demands  to Virginia Riley constituted an additional, overt act.  This case does not further the defendant's argument as to the jury instructions, but instead relates to the defendant's first argument as to sufficiency of the evidence.

Finally, the defendant points to *Wright*, 300 Fed. App'x at 611 n.3.  In *Wright*, the only relevant portion of the opinion to the current case is footnote three, which states that there "is no uniformly accepted definition of the phrase "acting as such," and courts disagree with respect to the amount of independence required to separate an overt act from the original act."  *Id.*  The *Wright* court concluded that it did not need to address that question because the defendant's actions "went beyond mere bravado."  *Id.*

In its response, the government states that the district court did not abuse its discretion by allowing counsel to argue the meaning of the phrase.  The government contends that the defendant actually benefitted from this argument because he at least had

the opportunity to argue that he must have violated an official duty of a United States Marshal to be convicted under the statute.

The district court did not abuse its discretion in not defining the phrase, "acts as such." The jury instructions laid out the law requiring a misrepresentation, knowledge that it was false, and an act in the assumed role. To reverse the conviction, this Court must have "substantial doubt that the jury was fairly guided." *Smith*, 13 F.3d at 1424. In allowing counsel to argue the meaning of "acts as such," we cannot find that the district court abused its discretion. Additionally, we find that the jury instructions accurately state the governing law and are sufficient to accurately inform the jury of the applicable legal standards. Therefore, the jury instructions were not erroneous.

## III.  CONCLUSION

In this case, the evidence was sufficient to satisfy even the strictest construction of 18 U.S.C. § 912 and the district court's jury instructions regarding the "acts as such" element of the charged offense were not erroneous. Accordingly, we AFFIRM.

ENTERED FOR THE COURT,


Frederick P. Stamp, Jr.
Senior District Judge

-14-